IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| KIM Y. LINEAR, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 05-1164-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Richard A. Sly
1001 SW 5th Avenue, Suite 1901
Portland, Oregon 97204

Linda Ziskin
3 Monroe Parkway, Suite P, PMB #323
Lake Oswego, Oregon 97035

    Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

Neil J. Evans
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

Stephanie R. Martz
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Kim Linear brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the

past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that plaintiff suffered from severe impairments of status-post lumbar laminectomy and depression. However, the ALJ did not find that these impairments met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations. The ALJ formed a residual functional capacity for plaintiff that

included light lifting limits, a sit/stand option, the ability to occasionally climb, stoop, kneel, crouch, crawl or bend, no ladders, ropes or scaffolds, limited to "simple one, two, three-step work," and limited public contact. The ALJ determined that plaintiff could not return to her past employment as a laborer, production worker or fast food worker. The ALJ did, however, find that plaintiff could perform other work in the national economy, including office helper and small products assemblers.

**FACTS**

Plaintiff was 33 years old at the time the ALJ issued his decision. She obtained her high school equivalency degree in June of 2002. At the time of the hearing, she was attending Portland Community College on a full time basis, which she had been doing since 2002. She took classes online for two semesters. She stopped attending classes in person because she had difficulty walking between buildings, and sitting through class. With the online classes she could lie in bed and use her laptop computer.

She last worked in September 1995, and quit working for "no particular reason." Tr. 92. She had two children living with her at the time of the hearing, ages 6 and 3.

Plaintiff's vehicle was rear-ended in 1999. She experienced upper and lower back pain, which increased and moved to her mid-back when she became pregnant with her youngest child later that year. Daniel Friedman, M.D., diagnosed plaintiff with back pain, possible right-sided S1 radiculopathy, and obesity on July 11, 2002. Karen Harris, D.O. treated plaintiff for bilateral lower extremity pain. Kent Grewe, M.D., a neurosurgeon, diagnosed plaintiff with grade III to

IV spondylolisthesis at L5-S1.[1]  The MRI also showed disc herniations.  Dr. Grewe performed surgery in March of 2004, a few weeks before the hearing.  Plaintiff has taken Prozac and Wellbutrin for depression.

Plaintiff testified that she experiences terrible pain in her legs, and has difficulty walking from her bed to the couch, and on to the kitchen.  Her boyfriend and friends help take care of the house and children.

## DISCUSSION

I.  <u>Duty to Develop the Record</u>

Plaintiff claims that the ALJ failed to consider medical evidence that the ALJ received after the record closed but before the ALJ issued his decision.  In addition, plaintiff asserts that the Appeals Council failed to adequately consider the evidence in reviewing the ALJ's decision.  Plaintiff contends the case should be remanded so that the ALJ can consider the evidence.

A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted).

Additional evidence presented to the Appeals Council but not seen by the ALJ may be considered in determining if the ALJ's denial of benefits is supported by substantial evidence.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180 (9th Cir. 2000), <u>cert. denied,</u> 531 U.S. 1038 (2000).  The court may not hold on the basis of the additional evidence, however, that the claimant is entitled to an immediate award of benefits.  The case must be remanded to the ALJ for consideration of

---

[1]Spondylolisthesis is "forward displacement of a lumbar vertebra on the one below it and esp. of the fifth lumbar vertebra on the sacrum producing pain by compression of nerve roots."  Merriam Webster's Medical Desk Dictionary 762 (1996).

the new evidence, rebuttal by the Commissioner, and any additional testimony needed because of the new evidence. Id.

The records at issue are those of Dr. Grewe, who saw plaintiff after her surgery in March of 2004. At the hearing, plaintiff explained that she had undergone back surgery a little over a month before the hearing. Plaintiff informed the ALJ that she had been experiencing pain, and had additional x-rays taken, and had scheduled an MRI. At the beginning of the hearing, the ALJ indicated that he would keep the record open, and asked plaintiff to complete a release so that the ALJ could get the information from the hospital. At the end of the hearing, the ALJ stated that he would keep the record open for twenty days. The attorney then stated, "We think we can get Dr. Grewe's materials . . . ." Tr. 307. The following colloquy then took place:

> ALJ: Who's getting Dr. Grewe's information? You are?
> Atty: You think you--
> Clmt: I can get it. I'm going to see him Tuesday.
> . . .
> ALJ: So you get Dr. Grewe. Is that pretty much --
> Atty: All right.
> ALJ: -- what we need?
> Atty: I think so.
> ALJ: Okay.

Id.

Plaintiff's attorney did not request the records until September 13, 2004, less than two weeks before the ALJ issued his decision. There is no evidence to show that the ALJ received these medical records prior to issuing his decision.

The ALJ discharged his duty to develop the record since he kept "the record open after the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150; see also

Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ complied with duty when he requested additional information and left the record open for supplementation).

The Appeals Council considered the additional records and determined that "this information does not provide a basis for changing the Administrative Law Judge's decision." Tr. 5. Contrary to plaintiff's characterization of that decision, however, the Appeals Council went on to explain why the evidence did not undermine the ALJ's decision. The Appeals Council pointed out that the MRI subsequent to the hearing did not show significant changes as compared with an earlier MRI that was in the record at the time the ALJ issued his decision. In addition, the Appeals Council explained that plaintiff reported to Dr. Grewe that she was not experiencing low back pain and she was swimming for exercise. The Appeals Council also noted that Dr. Grewe indicated the foraminal stenosis had opened up and he scheduled an appointment to take place in two months.

As Ramirez v. Shalala, 8 F.3d 1449 (9th Cir. 1993) teaches, if the Appeals Council examines the ALJ's decision, and the additional material, and concludes that the ALJ's decision was proper, the court can consider both the ALJ's decision and the additional material submitted to the Appeals Council, and need not remand it to the ALJ. This is true where, as here, the Commissioner does not dispute that the material was properly reviewed by the Appeals Council, or that this Court may consider the additional information.

Having reviewed the material, I agree with the Commissioner that Dr. Grewe's report does not undermine the ALJ's decision. Dr. Grewe reports that plaintiff has lower extremity pain still, but that the numbness has resolved, and she is improved compared to her preoperative status. She swims and is interested in physical therapy. No new medications were prescribed.

Page 8 - OPINION AND ORDER

Plaintiff complained of lower extremity pain at the hearing, and the ALJ included a sit/stand option in plaintiff's residual functional capacity to account for it. Accordingly, as noted by the Appeals Council, the additional evidence does not provide a basis for changing the ALJ's decision.

II.     Severity of Other Impairments

Plaintiff asserts that the ALJ neglected to consider plaintiff's obesity and back condition as severe impairments. Plaintiff argues that the case should be remanded so that the ALJ can properly consider all of plaintiff's impairments.

It is plaintiff's burden to establish that she suffers from a "disability" under the Act, which is defined in part to be a "medically determinable physical or mental impairment." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). An impairment or a combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

Plaintiff points out that Dr. Friedman diagnosed plaintiff with obesity, and a state agency doctor listed obesity as a secondary diagnosis. In addition, plaintiff was diagnosed with spondylolisthesis, which remained after surgery. The Commissioner responds that plaintiff is unable to show that any obesity remained as an impairment for any twelve month period. In addition, the Commissioner argues that plaintiff does not explain how the additional diagnoses are inconsistent with the residual functional capacity the ALJ created for plaintiff.

When Dr. Friedman diagnosed plaintiff with obesity in July of 2002, plaintiff weighed 198 pounds as a 5'3" woman. The state agency doctor listed obesity as a diagnosis in 2002. Throughout 2003, Robert Hoffman, M.D. recorded plaintiff's weight as 195-197 with a height of 5'4". Tr.161, 165, 167. Accordingly, although Dr. Grewe identified plaintiff as only "overweight" in 2004, the record reflects that plaintiff was obese during the twelve month period of 2002 to 2003. As a result, the ALJ erred in failing to consider plaintiff's obesity as a severe impairment.

However, as the Commissioner points out, the record does not indicate that plaintiff's obesity exacerbated her symptoms. There is no evidence in the record that any of her doctors associated her obesity with any of plaintiff's limitations. As the Ninth Circuit in Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005), pointed out, Social Security Ruling 02-01p states:

> [An ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairments. [The ALJ] will evaluate each case *based on the information in the case record.*

(emphasis added). Indeed, the state agency doctor evaluated plaintiff's functional limitations, even considering the obesity, and the ALJ's residual functional capacity reflected those limitations. Without evidence in the record that would have alerted the ALJ to any limiting effects of plaintiff's weight, the ALJ's failure to discuss its impact is not error.

With regard to plaintiff's back pain, plaintiff argues that the ALJ did not consider her diagnosis of spondylolisthesis, "severe" L5-S1 stenosis, and lower extremity "paresthesias and neurogenic claudication symptoms." Tr. 207. However, as the Commissioner points out, plaintiff does not explain how these additional diagnoses impose other limitations on her abilities

Page 10 - OPINION AND ORDER

not covered by the severe impairment of status-post lumbar laminectomy. The ALJ considered plaintiff's back impairment in forming a residual functional capacity that allowed for plaintiff to sit and stand at will.

The ALJ's decision is supported by substantial evidence in the record.

III.     Equivalence to a Listing

Plaintiff claims that the ALJ erred in ruling that her impairments, in combination, are not equal in severity to a listed impairment, pointing to Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) in which, according to plaintiff, back pain and depression equaled Listing 12.04, Affective Disorders. Plaintiff also argues that the ALJ failed to adequately recite his findings on equivalence. Plaintiff argues that the case should be remanded so that the ALJ can make an appropriate evaluation of equivalence.

The listings set out at 20 CFR pt. 404, Subpart. P, App. 1 are "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990). For a claimant to show that her impairment matches one of those listed, the impairment must meet all of the specified medical criteria. Id. at 530. Alternatively, a claimant may show that her unlisted impairment is "equivalent" to a listed impairment, but to do so she must present medical findings equal in severity to all the criteria for the one most similar listed impairment. Id. at 531. Equivalence is determined on the basis of a comparison between the "symptoms, signs and laboratory findings" about the claimant's impairment as evidenced by the medical records with the medical criteria shown with the listed impairment. 20 C.F.R. § 416.929(d)(3). If a claimant's impairment matches or is equivalent to a listed impairment, she is presumed unable to work and is awarded

benefits without a determination whether she can actually perform prior work or other work. Sullivan, 493 U.S. at 532.

Plaintiff bears the burden of proving that she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations. Burch, 400 F.3d at 683.

The ALJ's findings on this issue were sufficient. The ALJ specifically identified Listing 1.04 and 12.04, evaluated the medical evidence and articulated a basis for his finding. Concluding that the record did not contain the necessary medical findings, the ALJ demonstrated that he had considered plaintiff's arguments about whether her impairments met or equaled the listings.

In addition, the ALJ's decision that plaintiff's impairments did not equal a listing is supported by substantial evidence. Lester is not helpful to plaintiff since, in that case, the court did not hold that "depression plus back pain effectively equaled Listing 12.04," as plaintiff asserts. Plaintiff's Opening Brief at 11. Instead, the court concluded that the ALJ erred in concluding any depression the plaintiff suffered from was due to the back injury, when the ALJ should have considered the physical pain in conjunction with plaintiff's severe impairments of affective disorder and personality disorder. The court would have remanded to the ALJ for further review but for other errors that required a remand for benefits. Accordingly, contrary to the plaintiff's argument, simply because plaintiff experiences back pain and depression does not mean that her impairments equal Listing 12.04. Furthermore, contrary to the error made by the ALJ in Lester, the ALJ here determined that plaintiff experiences only mild limitations that do

not rise to the level of "marked" required in the listings, without limiting his opinion to the source of the problem.

The ALJ's opinion is supported by substantial evidence in the record.

IV.   Plaintiff's Credibility

Plaintiff argues that the ALJ erred in assessing her credibility.  Specifically, plaintiff asserts that the ALJ incorrectly based his credibility finding on the fact that the medical evidence did not substantiate plaintiff's level of pain.  In addition, plaintiff faults the ALJ for relying on plaintiff's failure to voluntarily disclose past drug and alcohol addiction, and for daily activities that plaintiff is unable to sustain.  The Commissioner responds that the ALJ properly found plaintiff not credible due to her level of activities and other inconsistent behavior.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom.  The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  Id. at 1282.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  If there is no affirmative evidence of

Page 13 - OPINION AND ORDER

malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

Plaintiff produced medical evidence of underlying impairments consistent with her complaints and there is no evidence that she is malingering. Therefore, the ALJ must provide clear and convincing reasons for rejecting her testimony.

The ALJ provided such reasons here. Although plaintiff takes issue with the ALJ's summary of the medical evidence, claiming that the ALJ relied on inaccurate references to the medical evidence, the ALJ did not consider such references in his credibility finding.[2]

However, plaintiff is correct that the ALJ erred in relying on plaintiff's purported lack of candor regarding her drug and alcohol history when determining that plaintiff is not entirely credible. Specifically, the ALJ stated,

> The undersigned does not find the claimant to be totally credible concerning her limitations because she was not forthcoming with her drug and alcohol history. In fact, the claimant did not testify to any drug and alcohol problems until the undersigned directed her to a note in the record about residential treatment. When asked about this, the claimant did admit to using all street drugs since age 7 and being in the treatment program from March 26, 2001 to February 11, 2002. Before this testimony, she did not admit to any use.

Tr. 33. As the plaintiff points out, neither the ALJ nor plaintiff's counsel asked a question earlier in the hearing giving plaintiff the opportunity to describe her past addiction. When asked by the

---

[2] In evaluating whether plaintiff's impairment met or equaled a listing, the ALJ stated that her leg raising tests have never been more than "slightly" positive. According to the plaintiff, a straight leg test is either positive or negative. In addition, the ALJ stated that there was no evidence of spinal stenosis, when it had been diagnosed by Dr. Grewe. These may have been errors, but they were not made in the context of evaluating plaintiff's credibility. Furthermore, they do not change the outcome of the ALJ's decision on the listings since plaintiff's impairments did not meet or equal other requirements set out in the listings.

Page 14 - OPINION AND ORDER

ALJ towards the end of the hearing, plaintiff explained her history, and even offered to provide a urinalysis to prove she is no longer taking drugs. The ALJ's belief that plaintiff was not forthcoming is not supported by substantial evidence in the record.

Nevertheless, the fact that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is improper. Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2003). In fact, here, the ALJ gave numerous reasons for finding plaintiff's testimony not credible. The ALJ referred to plaintiff's activities, including raising two children without help, for at least a portion of the time plaintiff claims disability, attending Portland Community College classes on campus for a portion of the time plaintiff claims disability, and attaining a grade point average of 3.5.

While these activities alone might not qualify as clear and convincing reasons, the ALJ noted that plaintiff has a poor work history, showing that her last job was in 1995, four years before her alleged onset date. The ALJ also pointed out that the medical record reflects questionable credibility. Specifically, the "actual reason" for plaintiff's visit to the emergency room in January of 2003 was to obtain a "time-loss authorization" to avoid job search responsibilities as part of her participation in a job search program arranged by the Department of Family and Children's Services. Tr. 188, 33. In addition, the ALJ noted that Dr. Oliver reported plaintiff was able to move "freely while picking up her active daughter during the exam." Tr. 195, 33. All of these reasons are clear and convincing, supported by substantial evidence in the record. Accordingly, the ALJ did not err in his credibility analysis.

V.    Lay Witness Testimony

Plaintiff takes issue with the ALJ's failure to indicate whether he accepted or rejected the testimony of Raymond Limbrick, and with the ALJ's utter failure to discuss the testimony of Tamara Tillman. The Commissioner responds that the residual functional capacity the ALJ formed reflected the observations of Limbrick, and that the ALJ's failure to discuss Tillman's testimony was harmless error.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In addition, "[w]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

With regard to Limbrick's testimony, the ALJ stated, "Although the claimant and her witness [Limbrick] testified that she continues to have pain and has very limited activities, her testimony also indicates greater abilities than she appears willing to admit." Tr. 33. Accordingly, the ALJ rejected Limbrick's testimony. The ALJ rejected Limbrick's testimony based on substantial evidence in the record that plaintiff was capable of performing more

activities than Limbrick believed. Accordingly, the ALJ gave a reason for rejecting Limbrick's testimony.

Plaintiff is correct that the ALJ failed to discuss Tillman's testimony. Tillman reported that she sees plaintiff twice a week, that plaintiff leaves home every day to take the children to school, to go to school herself, and to pay bills. Tillman also reported that plaintiff goes to the grocery store twice a month, and visits friends three times a week. Tillman stated that plaintiff socializes with others, watches five hours of television a day, drives three times a week, and goes to religious services. Plaintiff bathes every day but washes her hair only three times a month. She vacuums three times a week, and takes out the trash every other day. According to Tillman, these chores are done well and without help. Furthermore, Tillman describes plaintiff's daily routine as follows:

> She makes breakfast for her and her two children. She wakes them up, dresses them and herself. Takes one to school and waits for the other one to be picked up. She goes to school. She comes home and waits for the first child to be dropped off and go pick up the other one from school. Comes home. Makes dinner, irons the kids clothes for the next day, give them baths and time for bed.

Tr. 111.

On the other hand, Tillman reported that plaintiff does not participate in social activities, such as parties, and that she is no longer able to enjoy activities she used to, such as long walks, sitting in the movies, running, or taking long drives. Tillman reports that plaintiff argues and takes offense easily, is on guard and feels attacked. Plaintiff exercises as much as her body allows. Plaintiff prepares easy meals that do not require a lot of standing. Plaintiff never undertakes yard work, gardening, home repairs or car repairs.

Pursuant to Stout, this Court cannot consider the ALJ's error in neglecting to discuss Tillman's testimony as harmless unless no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. Plaintiff's level of activity described by Tillman is not contrary to the ALJ's residual functional capacity. The activities that plaintiff used to enjoy involved long periods of standing or sitting, with no opportunity to change position. The ALJ's residual functional capacity permits plaintiff to sit and stand at will. Similarly, the ALJ limited plaintiff's contact with the public to avoid any problems with plaintiff's social skills. Accepting Tillman's report that plaintiff does not do any yard work, gardening, home repairs or car repairs is, again, not inconsistent with plaintiff's residual functional capacity that permits a sit/stand option, and only occasional stooping, crouching or bending.

In summary, the ALJ did not err in rejecting Limbrick's testimony, and any error in failing to discuss Tillman's testimony was harmless.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this      21st         day of November, 2006.


                                                   /s/ Garr M. King
                                                Garr M. King
                                                United States District Judge